JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re YIHE FORBES, LLC,<br><br>　　　　Debtor,<br><br>YIHE FORBES, LLC,<br><br>　　　　Appellant,<br><br>　　　　v.<br><br>CITY OF CHELSEA,<br><br>　　　　Appellee. | No.　CV 25-5801 PA<br><br>OPINION ON APPEAL FROM BANKRUPTCY COURT<br><br>Bankruptcy Case No. 2:25-bk-12772-NB |

Before the Court is an appeal filed by debtor YiHe Forbes, LLC ("YiHe" or "Appellant"). YiHe challenges orders from the Bankruptcy Court granting relief from the automatic stay in favor of appellee City of Chelsea (the "City" or "Appellee"), denying YiHe's effort to have a court-appointed receiver turn over assets to the bankruptcy estate and YiHe as a debtor in possession, dismissing YiHe's bankruptcy case, and an in rem order preventing YiHe from benefitting from an automatic stay for two years should it file another bankruptcy case involving the subject property. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

## I. Factual and Procedural Background

YiHe has owned, since 2014, a collection of adjoining properties in the City of Chelsea, Massachusetts (the "Property"). The Property consists of approximately 18 acres that prior owners used for industrial purposes. The Property is contaminated with hazardous waste and includes several abandoned and delapidated buildings. YiHe endeavored to obtain approvals to build 600 residential units and 20,000 square feet of commercial space on the Property. YiHe states that the Property was appraised for $27,500,000 in May 2021, but delays caused in part by the COVID-19 pandemic caused some of its permits and approvals to lapse despite YiHe's expenditure of over $8 million on its efforts to develop the Property.

In November 2021, the City convened a Board of Survey, which found multiple buildings on the Property to be "abandoned, dangerous to life and limb, open to the weather, structurally compromised and in all instances a serious hazard in case of fire." In December 2021, the City sent to YiHe the results of the Board of Survey reiterating previous orders to demolish the buildings or make them safe. Having received no response from YiHe, the City undertook measures to secure the Property and the buildings on it. In March 2023, the City notified YiHe that the City had incurred expenses of $310,088.25 and that the City would record a lien in this amount on the Property as authorized by statute if the debt remained unsatisfied. The City received no response from YiHe to any of these communications, and on April 6, 2023, the City of Chelsea recorded a lien in that amount.

In October 2023, the Massachusetts Department of Environmental Protection sent to YiHe a Notice of Non-Compliance in which it stated that YiHe had failed to conduct required hazardous waste maintenance and monitoring at the Property since November 2018. That same month, one of the abandoned buildings at the Property collapsed. The City ordered YiHe to remedy the collapsed building in May 2024. By August 2024, the City's Board of Health found the Property to "be unfit for human habitation, pose a nuisance or risk of nuisance, and a risk for accident to the public" and gave YiHe 14 days to begin abatement of the conditions at the Property.

YiHe's lender, Shanghai Commercial Bank (the "Bank") initiated litigation in Massachusetts on September 9, 2024 ("Massachusetts Superior Court Action"). The City intervened in the Massachusetts Superior Court Action on September 19, 2024. YiHe and the Bank resolved their dispute and the City substituted as Plaintiff in the Massachusetts Superior Court Action on October 17, 2024. On November 18, 2024, there was a nine-alarm fire at the Property, which caused various harm in the community, including the suspension of rail service along tracks adjacent to the Property. The City moved to appoint a receiver in the Massachusetts Superior Court Action on November 20, 2024. The Massachusetts Superior Court, over YiHe's opposition, appointed L. Alexandra Hogan as the receiver (the "Receiver") on November 22, 2024.

In March 2025, the Superior Court authorized the Receiver to obtain an emergency loan from the City to provide funds to secure and patrol the Property. The City has expended more than $300,000 to support the Receiver. Also by March 2025, the Receiver had sought authorization to enter into an agreement with the Massachusetts Audubon Society (the "Audubon Socieity") for the Audubon Society to purchase the Property for $8,360,000. The Massachusetts Superior Court authorized the Receiver to enter into the agreement with the Audubon Society on March 25, 2025. In approving the sale, the court determined that:

- "The defendants have repeatedly claimed that a confirmed buyer will appear. None have to this point."
- "What is needed in this matter is a certain and soon outcome."
- "The property remains dilapidated, a danger to the public and the environment."
- "This offer [from Audubon Society] will repay the taxpayers of Chelsea, clean up the property and provide a reasonable development for the site."
- "Defendants have had ample opportunity to suggest a viable alternative but have failed to do so."

- "The receiver is to be commended for her efforts in keeping the property as safe as possible and in finding an actual buyer."

Prior to the Receiver's negotiations with the Audubon Society, YiHe had retained a broker in September 2024 to market the Property. YiHe claims that the Receiver received other higher offers to purchase the Property in or around March 2025 for $13,000,000, $17,880,000, and $20,000,000. YiHe has appealed the Sale Order and that appeal is proceeding before the Massachusetts Court of Appeal.

YiHe filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Central District of California on April 3, 2025. On April 22, 2025, the City filed a Motion in the Massachusetts Superior Court Action to determine whether the automatic stay in YiHe's bankruptcy case applied to the case in Massachusetts Superior Court Action. The City's Motion asserted that all the Receiver's actions were excepted from the automatic stay, and that the sale to the Audubon Society was an essential part of the exercise of the City's police and regulatory power. YiHe opposed the Motion, argued that the sale did not relate primarily to matters of public safety and did not effectuate public policy, and that the Bankruptcy Code's automatic stay prevented the Receiver from moving forward and selling the Property and that the Receiver was instead required to deliver estate property in her possession—namely, the Property—to YiHe. The Massachusetts Superior Court granted the City's Motion on May 14, 2025.

YiHe's bankruptcy counsel received, on April 24, 2025, an offer to purchase the Property for $20,888,000. On May 8, 2025, YiHe filed a Motion to Require Receiver to Comply with Bankruptcy Code Section 543 (the "Turnover Motion"). On May 13, 2025, the City filed a Motion for Relief from the Automatic Stay, Relief from Turnover, and Dismissal (the "Relief from Stay Motion") with the Bankruptcy Court. Prior to the June 3, 2025 hearing on the Turnover Motion and Relief from Stay Motion, the Bankruptcy Court issued a detailed tentative ruling in the City's favor. The tentative ruling also indicated the Bankruptcy Court's conclusion that "in rem" relief was warranted that would prevent an automatic stay from applying to the Property should YiHe commence another bankruptcy

-4-

case involving the Property within two years, though the City had not asked for that relief and the parties had not briefed issues related to such a bar.

At the hearing, the Bankruptcy Court heard oral argument and then adopted its tentative rulings in full. Among other things, the Bankruptcy Court ruled that:

- The City's exercise of its police and regulatory powers through the appointment of a receiver is excepted from the automatic stay under section 362(b)(4).
- On alternative grounds, "cause" exists to grant relief from the automatic stay to proceed with the receivership and related actions in Massachusetts under § 362(d)(1), including retroactive annulment of the stay as of the petition date.
- The Receiver is not required to turn over the Property to the bankruptcy estate and is excused from such turnover under section 543(d).
- Dismissal of the bankruptcy case is warranted and authorized as in the interests of creditors and the debtor under section 305(a).
- Alternatively, "cause" exists under section 1112(b)(4) to dismiss the bankruptcy case for gross mismanagement of the estate, failure to pay property taxes, failure to maintain appropriate insurance that poses a risk to the estate or to the public, and for substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.
- No automatic stay shall apply to the Property in any bankruptcy case filed within two years after the date of entry of the Bankruptcy Court's Order.

The Bankruptcy Court issued a Memorialization and a Final Order on June 12 and 13, 2025, respectively. YiHe filed a Notice of Appeal on June 25, 2025, and elected to have the appeal heard by the District Court.

## II. Jurisdiction

This Court possesses appellate jurisdiction over the Bankruptcy Court's final orders granting relief from the automatic stay, dismissing the bankruptcy case, denying turnover, and granting in rem relief. See 28 U.S.C. § 158(a).

## III. Standard of Review

The Bankruptcy Court's decision to grant relief from the automatic stay under Bankruptcy Code § 362 or grant retroactive relief from the automatic stay is reviewed for abuse of discretion. See Mataya v. Kissinger (In re Kissinger), 72 F.3d 107, 108 (9th Cir. 1995). The dismissal of a case under Bankruptcy Code §§ 305(a) and 1112(b) is reviewed for an abuse of discretion. See In re Owens, 552 F.3d 958, 960 (9th Cir. 2009). The decision of the Bankruptcy Court to grant in rem relief under § 362(d)(4) is reviewed for abuse of discretion. See First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.), 470 B.R. 864, 868 (B.A.P. 9th Cir. 2012). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible or without support from evidence in the record. In re Ellis, 523 B.R. 673, 677 (B.A.P. 9th Cir. 2014). Issues related to turnover appear to implicate whether "property is included in a bankruptcy estate and procedures for recovering estate property" that are questions of law reviewed de novo. Newman v. Schwartzer (In re Newman), 487 B.R. 193, 197 (B.A.P. 9th Cir. 2013).

The Bankruptcy Court's factual findings are reviewed for clear error. See In re Point Ctr. Fin., Inc., 957 F.3d 990, 995 (9th Cir. 2020). A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. In re Retz, 606 F.3d 1189, 1196 (9th Cir. 2010). Mixed questions of law and fact are reviewed de novo. In re Point Ctr. Fin., Inc., 957 F.3d at 995. A reviewing court must accept the Bankruptcy Court's findings of fact unless upon review the reviewing court is left with the definite and firm conviction that a mistake has been committed. See In re Straightline Invs., Inc., 525 F.3d 870, 876 (9th Cir. 2008).

## IV. Discussion

YiHe challenges the Bankruptcy Court's decision granting the City's Relief from Stay Motion, which not only concluded that the automatic stay did not apply to the Receiver's sale of the Property to the Audubon Society, but also dismissed the bankruptcy case. YiHe also challenges the Bankruptcy Court's denial of its Turnover Motion and the Bankruptcy's Court's in rem order in which the Bankruptcy Court declared that an automatic stay would not apply to the Property in any new bankruptcy case filed within two years.

### A. Relief from the Automatic Stay

The City moved for, and the Bankruptcy Court granted, relief from the automatic stay under both § 362(b)(4) and § 362(d)(1). Under § 362(b)(4), the filing of a bankruptcy petition "does not operate as a stay . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power." 11 U.S.C. § 362(b)(4). Section 362(d)(1) provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the day . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." Id. at § 362(d)(1).

The police and regulatory exception to the automatic stay generally refers to "'the enforcement of state laws affecting health, welfare, morals, and safety, but not regulatory laws that directly conflict with the control of the res or property by the bankruptcy court.'" City & County of San Francisco v. PG & E Corp., 433 F.3d 1115, 1123 (9th Cir. 2006) (quoting Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n, 997 F.2d 581, 591 (9th Cir. 1993)). The Ninth Circuit has "applied two alternative tests to determine whether the actions of a governmental unit are in exercise of its police and regulatory power as defined in 11 U.S.C. section 362(b)(4): the 'pecuniary purpose' and the 'public policy' test. Satisfaction of either test will suffice to exempt the action from the reach of the automatic

stay." Id. at 1123-24 (citing Universal Life Church v. United States (In re Universal Life Church, Inc.) 128 F.3d 1294, 1297 (9th Cir. 1997)). "If the action primarily seeks to protect the government's pecuniary interest, the automatic stay applies. If the suit primarily seeks to protect the public safety and welfare, the automatic stay does not apply." Id. at 1124. "The public policy test 'distinguishes between government actions that effectuate public policy and those that adjudicate private rights.'" In re Universal Life Church, Inc., 128 F.3d at 1297 (quoting NLRB v. Continental Hagen Corp., 932 F.2d 828, 833 (9th Cir. 1991)). In applying the pecuniary interest and public policy tests, a bankruptcy court "must analyze the claims separately." City & County of San Francisco, 433 F.3d at 1124.

Section 362(d)(1)'s "for cause" standard "has no clear definition and is determined on a case-by-case basis." In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990) (citing In re MacDonald, 755 F.2d 715, 717 (9th Cir. 1985)). This Court concludes that the Bankruptcy Court did not abuse its discretion in granting relief from the automatic stay "for cause" under § 362(d)(1). The Bankruptcy Court cited the appropriate standard and its conclusion that sufficient cause existed in the circumstances to grant the City's Relief from Stay Motion was supported by ample factual findings concerning, among other factors, the ongoing public safety situation at the Property supporting the Receiver's sale of the Property to the Audubon Society in a process overseen by the Massachusetts Superior Court. The factual findings supporting those conclusions were not clearly erroneous. For the same reasons, the Bankruptcy Court did not abuse its discretion under § 362(d)(1) to grant relief from the stay retroactively.[1/]

**B.     Denial of the Turnover Motion**

The Bankruptcy Code generally requires that a custodian in possession, including a receiver, must deliver all assets in her possession, custody, or control to the debtor-in-possession. See 11 U.S.C. § 543(a). There is an exception if "the interests of

---

[1/]     Because this Court has affirmed the Bankruptcy Court's granting of the Relief from Stay Motion based on § 362(d)(1), the Court need not and therefore declines to address the Bankruptcy Court's alternative grounds under § 362(b)(4).

creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property." 11 U.S.C. § 543(d).  'If turnover is opposed, courts consider a number of factors in determining whether to order turnover, including '(1) whether there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use the property for the benefit of its creditors; and (3) whether there has been mismanagement by the debtor.'' In re Orchards Village Invs., LLC, 405 B.R. 341, 353 (Bankr. D. Or. 2009) (quoting 5 Collier on Bankruptcy ¶ 543-12 (15th ed. 2009)).

As the City points out, although YiHe did file the Turnover Motion, YiHe did not unequivocally seek turnover of the Property from the Receiver to YiHe.  Instead, YiHe appeared to agree that the Receiver could maintain possession of the property and continue the Receiver's efforts to maintain and safeguard the property pending sale of the Property to a buyer offering a higher price than the Audubon Society had agreed to pay through a sale process overseen by the Bankruptcy Court instead of in the Massachusetts Superior Court Action.  According to the Bankruptcy Court, "removing the Receiver from control over the . . . Property and its sale would only pose a danger to public health and safety — risking liability (not to mention public welfare) — and increase the costs and delays in the receivership proceedings, all in exchange for no realistic benefits to the bankruptcy estate." Even if YiHe's position has not waived its arguments concerning the Bankruptcy Court's denial of the Turnover Motion, this Court concludes, even applying a de novo standard of review, that the Bankruptcy Court did not commit reversible error when it denied the Turnover Motion.

## C. Dismissal of the Bankruptcy Case

The Bankruptcy Code authorizes a bankruptcy court to dismiss a case or suspend all proceedings if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).  The test is whether "both the debtor and the creditors would be 'better served' by a dismissal." In re Eastman, 188 B.R. 621, 625

(9th Cir. BAP 1995). Courts may consider seven factors to determine whether dismissal is appropriate under Section 305(a)(1):

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

Marciano v. Fahs (In re Marciano), 459 B.R. 27, 47 (B.A.P. 9th Cir. 2011). Courts should analyze "the totality of the circumstances." Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007).

Section 1112(b) of the Bankruptcy Code provides that courts may dismiss a case for "cause" and provides a non-exhaustive set of reasons. 11 U.S.C. § 1112(b)(4). These include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "gross mismanagement of the estate," "and failure to maintain appropriate insurance that poses a risk to the estate or to the public." 11 U.S.C. §§ 1112(b)(4)(A), (B), and (C). The party seeking dismissal bears the burden of establishing cause. See Baroni v. Seror (In re Baroni), 36 F.4th 958, 966 (9th Cir. 2022). Yet, even establishing cause "is not definitive, of course, because the statute makes clear that even where cause is established, the bankruptcy court must still consider the best interests of creditors and the estate." Id. A bankruptcy court must "must also consider whether there are unusual circumstances that indicate that the creditors' and the estate's interests are best

served by not granting relief under Section 1112(b) and allowing the Chapter 11 proceeding to continue." Id. at 968.

The Court concludes that the Bankruptcy Court did not abuse its discretion by granting the City's Relief from Stay Motion that sought dismissal under both § 305(a)(1) and § 1112(b). This Court additionally concludes that the Bankruptcy Court's decision to dismiss the bankruptcy case on both grounds was supported by substantial factual findings that were not clearly erroneous.

### D.     In Rem Relief

The Bankruptcy Court, relying on In re Vazquez, 580 B.R. 526 (Bankr. C.D. Cal. 2017), issued in rem relief providing that "no automatic stay shall apply to such property in any bankruptcy case purporting to affect such property and filed within two years after the date of entry f this order, unless otherwise ordered by the court presiding over that bankruptcy case." The in rem relief in In re Vazquez was issued pursuant to § 362(d)(4), which provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either —
> (A)     transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B)     multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4).

YiHe contends that the Bankruptcy Court erred when it issued the in rem relief because the City had not filed a motion seeking that relief, so there was never a "request of a party in interest and after notice and a hearing" to allow the Bankruptcy Court to consider or grant such relief. YiHe also asserts that the Bankruptcy Court committed reversible error because there is no evidence that there was a "transfer of all or part ownership of, or other interest in" the Property or "multiple bankruptcy filings affecting such real property" so the factual requirements for an in rem order are lacking.

The Court concludes that, at a minimum, the Bankruptcy Court abused its discretion by considering the in rem relief on its own motion without a request by the City or another party in interest as required by § 362(d) and without adequate notice to YiHe. The Court therefore vacates the in rem order.[2]

## Conclusion

For all of the foregoing reasons, the Court affirms the Bankruptcy Court's granting of the City's Relief from Stay Motion and the denial of YiHe's Turnover Motion except to the extent the Bankruptcy Court imposed an in rem order pursuant to § 362(d)(4). The Court vacates the in rem order, but affirms the Bankruptcy Court's order granting retroactive relief from the automatic stay. dismissing the bankruptcy case, and denying turnover to the debtor.

IT IS SO ORDERED.

DATED: November 20, 2025

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE

---

[2] In vacating the in rem order, this Court does not intend to limit the future consideration of any properly noticed motion seeking such relief.

-12-